# UNITED STATES DISTRICT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-cr-00035-RC** |
| | ) | |
| **JEFFERY P. SABOL, et. al,** | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT RONALD MCABEE'S MOTION FOR RELEASE FROM PRETRIAL DETENTION BASED ON VIOLATIONS RIGHTS TO DUE PROCESS AND EFFECTIVE REPRESENTATION BY COUNSEL

### Hearing Requested

William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

## Introduction

Tyre Nichols died on January 10, 2023, three days after he was beaten by five officers of the Memphis Police Department after they had taken him into custody following a car chase.  The Officers were fired and have now been charged with second-degree murder, aggravated assault-acting in concert, aggravated kidnapping, and other related charges.

Those five officers were granted bail and are now free in the community of Memphis, Tennessee.  https://www.wlbt.com/2023/01/27/5-former-mpd-officers-charged-with-murder-out-bond/.  Apparently, they do not represent a "danger to the community" while on release pending trial for murder.

Defendant Ronald McAbee was Tennessee county Deputy Sherriff on January 6, 2021.  The Government has conceded that video evidence in this case does not show Defendant McAbee actually striking or otherwise assaulting any police officer at the United States Capitol.  Yet Ronald McAbee has been detained pending trial for more than 17 months because he is deemed too much of a "danger to the community" to be released.

Defendant McAbee was arrested on August 17, 2021.  He has been detained trial since that date – a period of more than 16 months.  His trial is set to begin September 25, 2023.  He will spend more than 25 months detention before receiving his right to due process and a speedy trial.

Such a lengthy and unjustifiable period of pretrial detention is a violation of the Defendant McAbee's due process rights under the Fifth Amendment to the Constitution, and his immediate release on terms and conditions of pretrial release is the remedy to which he is entitled.

**Factual Background Relevant to the
Issue of Continued Detention.**

Defendant McAbee is held because of the government's decision to

charge him with a violation of 18 USC 111(a)(1) and (b), based on the allegation

that Defendant McAbee assaulted and caused injury to Officer A.W. even

though the Government concedes that the video evidence does not show

Defendant McAbee striking any blows against Officer A.W.

Instead, the Government claims that Defendant McAbee, by his actions,

aided and abetted others who struck blows that injured Officer A.W.  But both

the Government and Senior District Judge Sullivan acknowledged that the

video evidence supports more than one possible conclusion in that regard.

The case was initially set for to trial on November 30, 2022.  *See*

02/07/2022 Minute Order.

| 02/07/2022 | | Minute Entry for proceedings held before Judge Emmet G. Sullivan: Arraignment/Status Conference as to JEFFREY P. SABOL (1) PETER FRANCIS STAGER (2) MICHAEL JOHN LOPATIC SR. (3) CLAYTON RAY MULLINS (4) JACK WADE WHITTON (5) LOGAN JAMES BARNHART (6) RONALD COLTON MCABEE (7) and JUSTIN JERSEY (9). All Defendants Consent To This Hearing Being Held Via VTC. Government Updated The Court On Discovery And Request Sixty (60) Day Continuance. Parties Discussed With The Court The Scheduling Of Next Status Conference and Jury Selection. The Court Sets Next Status Conference for 4/5/2022 at 12:00 PM in Telephonic/VTC before Judge Emmet G. Sullivan. Over Objection Of Defendant (s) PETER STAGER (02), and JACK WHITTON (05), The Court Will Toll Speedy Trial Time From 2/7/22 - 4/5/22 In The Interest Of Justice (XT) As To All Defendants. Jury Selection tentatively set for 11/30/2022 at 9:00 AM in Ceremonial Courtroom before Judge Emmet G. Sullivan.... (Entered: 02/08/2022) |
|---|---|---|

Because nine defendants remained in the case at the time, on September 1, 2022, the Court issued an order separating the case into two groups for purposes of trial, with the second group to proceed to trial at a date to be determined based on an agreement of parties.  *See* EFC. No. 205.

The parties were advised the Court was available for the second trial only in March or September of 2023 – no dates in between.  But counsel for the Government advised the second trial group that they were unavailable in March 2023, and the only possible trial dates for the second group would be in September 2023 – 13 months in the future.

Counsel for Defendant McAbee needed a short continuance from the first trial date as he was set for two trials on November 30, 2022.  Moving to the second trial group would resolve the calendar conflict.

That left Defendant McAbee with a dilemma: (1)  loose his retained counsel if the calendar conflict of his attorney could not be resolved and proceed to trial in the first trial group new counsel on November 28, 2022, or (2) move to the second trial group in order to keep his retained counsel but be forced to accept another 13 months of delay because the Government counsel was not available until the September 2023 dates offered by the Court.

Defendant McAbee opted to keep his retained counsel of his choice (getting new counsel as late as August 2022 would have likely resulted in needing to continue the November 2022 trial date anyway) and on August 9, 2022, the Court granted Defendant's unopposed motion to move to the second trial group.  *See* 08/09/2022 Minute Order.

The Court then set the trial for the second group on September 25, 2023, and not March of 2023 dates Defendant McAbee could have selected but for the unavailability of government counsel.  *See* 08/11/2022 Minute Entry.

On August 3, 2022, Senior Judge Sullivan denied Defendant McAbee's Motion for Reconsideration of the Detention Order keeping him in custody pending trial – a motion that had been pending since late May 2022. Defendant McAbee appealed that denial to the Circuit Court, but his appeal was denied on November 11, 2022.

Defendant McAbee has made continued efforts to gain his release from custody on terms and conditions of pretrial release pending trial.

The Court of Appeals for the D.C. Circuit has not considered the issue of at what point excessive pretrial detention violates due process.  Other Circuits have considered this issue, and uniformly concluded that pretrial detention in excess of two years is a violation of a detained defendant's right to due process under the Fifth Amendment to the Constitution, and a detained defendant may be entitled to a remedy in all but the most egregious circumstances.

Those Courts have recognized that the remedy for this constitutional violation is the granting of release on terms and conditions of pre-trial release – even in contravention of Bail Reform Act determination to the contrary.  Such a remedy should be afforded to Defendant McAbee at this point, after more than 18 months of pretrial detention, with another 7 months – at minimum – still ahead before his due process rights are afforded to him.

**Law and Argument**

I.     **Release from Custody Is Necessary Because Continued Detention of the Defendant Pending Trial Is An Unjustified Violation of his Due Process Rights.**

The government may detain a defendant prior to trial consistent with the due process clause of the Fifth Amendment so long as confinement does not amount to "punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535 (1979); United States v. Salerno, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987) (pretrial detention must be "regulatory, not penal").

Even in the absence of an expressed intention to punish, detention can become impermissible punishment when the detention "`appears excessive in relation to'" the non-punitive purpose. Wolfish, 441 U.S. at 538, 99 S.Ct. at 1873 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169, 83 S.Ct. 554, 568, 9 L.Ed.2d 644 (1963)).

Pretrial detention of a defendant, when of reasonable duration, serves important regulatory purposes, including the prevention of flight and the protection of the community from a potentially dangerous individual.[1] Salerno, 481 U.S. at 747-49, 107 S.Ct. at 2101-02. However, when detention becomes "excessively prolonged," it becomes unreasonable in relation to the regulatory goals of detention, at which point a violation of constitutional due process rights occur. See Salerno, 481 U.S. at 747 n. 4, 107 S.Ct. at n. 4.

The Supreme Court in Salerno did not address the issue of how long of a period of pretrial detention becomes a due process violation. But the issue has been addressed in several Circuits following Salerno.

---

[1] The Government did not seek to detain Defendant McAbee based on "risk of flight" so that issue is not, and never has been, before this Court.  The Defendant is detained only on the grounds of "danger to the community."

The Ninth Circuit recently addressed this issue squarely in <u>United States</u> <u>v. Torres</u>, 995 F.3d 695 (9th Cir. 2021).  Following case authority from other Circuits, the Ninth Circuit established a three-factor test for evaluating a claim that the length of pretrial detention constitutes a violation of a defendant's due process rights and requiring release as a remedy:

> "[I]n evaluating whether a due process violation has occurred, we weigh the following factors: (1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention under the Bail Reform Act.

<u>Id.</u> at 708.

The defendant in <u>Torres</u> made his initial appearance on August 26, 2019.  <u>Id.</u> at 699.  As of the date of the Ninth Circuit's -- April 23, 2021 -- the defendant's trial was set to for May 25, 2021.  <u>Id</u>. at 700.  Thus, a period of 21 total months would have been the length of pretrial detention between the date of the defendant's arrest and his trial.

In evaluating the claimed violation of due process, the Ninth Circuit began with the following observation:

> It is undisputed that at some point, pretrial detention can "become excessively prolonged, and therefore punitive," resulting in a due process violation. <u>United States v. Salerno</u>, 481 U.S. 739, 747 n.4, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The point at which detention constitutes a due process violation requires a case-by-case analysis…. [I]n evaluating whether a due process violation has occurred, we weigh the following factors: (1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention under the Bail Reform Act.

<u>Id.</u> at 708.

The Ninth Circuit ultimately affirmed the lower court's conclusion that further detention was justified – based primarily on the finding on the second

factor that the Government was not at fault for the excessive delays -- but did

so with an important caveat as it related to the trial date one month away:

> And if Torres is not tried by his current trial date of May 25, 2021, the
> district court and the prosecution must consider whether further
> prolonging Torres's pretrial detention crosses the line from regulatory to
> punitive detention.

Id. at 710.

In United States v. Gonzales Claudio, 806 F.2d 334 (2d Cir. 1986), the

Second Circuit addressed a similar challenge to pretrial detention, stating

that review of the basis for detention to determine whether a due process

violation is established requires a more exacting view of the evidentiary

justification supporting detention under the Bail Reform Act:

> "[W]e are entitled to apply a broader standard of review in
> determining the extent to which the facts regarding risk of flight, as
> found by the District Court, have significance on the constitutional issue
> of whether continued detention violates due process limitations."

Id. at 343; see also United States v. Jackson, 823 F.2d 4, 8 (2nd

Cir.1987); United States v. Gallo, 653 F.Supp. 320, 327 (E.D.N.Y.1986).

Although the language of the Second Circuit in Gonzales Claudio

addressed the due process claim as it related to "risk of flight," the Court cited

to and quoted from United States v. Zannino, 798 F.2d 544, 546 (1st Cir.1986),

where the First Circuit explicitly invoked the more demanding review of

evidence justifying detention in the context of a due process claim while being

held in pretrial custody as a "danger to the community" as is the case here.

Defendant McAbee addresses the Ninth Circuit's Torres test below.

**1.    Twenty-Five (25) Months of Pretrial Detention Violates
Defendant McAbee's Due Process Rights Under the Fifth
Amendment.**

The Government conceded in <u>Torres</u> – and the Ninth Circuit agreed --

that 21 months of pretrial detention constituted a  due process violation:

> This lengthy detention has been prolonged over Torres's consistent objection … and his persistent requests to be released with appropriate conditions. <u>The government conceded at oral argument that the length of Torres's pretrial detention weighs in favor of recognizing a due process violation. We agree</u>.

<u>Id</u>. at 708.  (Emphasis added.)

In <u>Zannino,</u> the First Circuit stated "we shall assume that in many,

perhaps most cases, sixteen (16) months would be found to exceed the due

process limitations on the duration of pretrial confinement."  <u>Zannino</u>, 798

F.2d at 548.  They did so notwithstanding that <u>Zannino</u> was accused of murder

and conspiracy to commit murder as the leader of an organized crime group.

> "[T]he charges against Zannino are of the gravest order, including predicate acts of murder and conspiracy to commit murder. If convicted of all offenses charged, <u>Zannino</u> would face a maximum sentence of imprisonment for 130 years."

> <u>Id</u>.

In <u>Zannino</u>, the government's factual basis for detention as a danger to

the community was found to be strong, including a finding that <u>Zannino</u>

"played a continuing leadership role in mob activities."  <u>Id</u>.  Notwithstanding all

that, the Court found that 16 months would have been unconstitutionally

excessive for pretrial detention, but for the fact that it was <u>Zannino</u> who at fault

for the trial delays, not the government. <u>Id</u>. at 547.

Courts are to consider not only the time spent in detention as of the date

of the motion, but also "the non-speculative … future detention," *i.e.,* the time

until trial and the anticipated length of that trial. *See* <u>United States v. Hare</u>,

873 F.2d 796, 801 (5th Cir. 1989); *see also* United States v. Ojeda Rios, 846 F.2d 167, 168-69 (2d Cir. 1988).

In Ojeda Rios, the Second Circuit ordered the release of the defendant even though the district court found that the defendant "posed a risk of flight and also presented a danger to the community."  After considering the 32 months of pretrial confinement to that point *and the fact that the trial was anticipated to take months*, the Court stated, "[W]e do not believe that due process can tolerate any further pretrial detention in this case."  Id. at 169.

The first Torres factor, based on the above-cited decisions from the First, Second, Fifth, and Ninth Circuits, favors the finding of a due process violation based on the likely length of Defendant McAbee's pretrial detention – a minimum of 25 months – by the time his trial is completed.

**2.**    **The Government is Largely At Fault for Trial in This Matter Due To The Extensive Delays in Producing All Discovery And Its "Limited" Availability For A Trial**.

The second factor of the Ninth Circuit's three-part test in Torres is the extent to which each party is responsible for the lengthy pretrial delay.  *See* Torres, 995 F.3d at 708.  The greater the degree of culpability on the part of the Government for the delay, the more this factor weighs in favor of finding a constitutional violation that requires a remedy.  Id.

Defendant McAbee was added as a defendant in case of United States v. Sabol, 21-cr-00035, in a Second Superseding Indictment returned by the grand jury on August 4, 2021.  The initial indictment in this case was returned by the grand jury on January 29, 2021.

As noted above, on February 7, 2022 – 13 months after the case was filed -- Senior Judge Sullivan for the first time set a trial date of November 30, 2022, approximately 22 months after the initial indictment was returned.

The primary reason for this unreasonable period of delay – in this and every other January 6 prosecution -- was the persistent inability of the Government throughout 2021 and for several months in 2022 to represent to the Court and the defendants that it had complied with its Rule 16 discovery obligations.  The Government is still producing discovery of video, audio, and documentary evidence even though the case has been pending more than two years, with no fewer than eighteen (18) discovery productions in that time:

In 2021:  May 12 and 21, July 12, 19, and 20, Aug. 11, Sept. 3, and 18, Oct. 21, and Nov. 8.

In 2022:  Feb. 22, July 27, Aug. 24, 25, and 26, Oct. 13, and Nov. 14.

The dates of production listed above relate only "case specific" discovery – discovery required under Rule 16 which relates directly to the named defendants and crimes charged in the indictment.

In addition to this "case specific" discovery, the Government has made no fewer than 24 productions of "global discovery" – including as recently as one week ago on January 26, 2023.  This "global discovery" relates to the overall scope of the events of January 6.

The inability of by the Government to timely comply with its Rule 16 discovery obligation has been the most important factor in the extensive delay between the indictment and the original trial date of November 28, 2022 – nearly two full years after January 6, 2021.

11

In addition to being unable to timely comply with Rule 16, Government counsel is responsible for an additional six-month delay from March to September 2023.

On August 1, 2022, Senior Judge Sullivan determined that there were too many co-defendants for one trial, and divided the defendants into two trial groups, with Defendant McAbee in the first trial group set for November 28, 2022. *See* EFC. No. 205.

Defendant McAbee's retained counsel was at that time attempting to resolve a calendar conflict posed by the November 28 trial date.[2] The creation of the second trial group in this case gave Defendant's counsel the chance to resolve the court calendar conflict. Therefore, Defendant McAbee requested to be moved to the second trial group.

During communications with the Government prior to moving to the second trial group, Government counsel communicated to all defense counsel that the Court only had dates in March, September, and October of 2023 available for trial. But Government counsel also stated that the prosecution team was not available in March, and accordingly the earliest the second group could go to trial would be in September 2023.

The Government's unavailability created a dilemma for Defendant McAbee — he could remain in the first trial group but possibly lose his retained

---

[2] Attorney Shipley was also set to begin trial on November 28, 2022, before Judge Amit Mehta in <u>United States v. Rhodes, et. al. 22-cr-00015</u>. The conflict resulted from Judge Mehta moving the trials of two groups of defendants in United States v. <u>Rhodes</u> from September 26 to November 28, so that the first group of defendants in the Rhodes case could delay their trial from July 11 to September 26 because of Government delays in producing discovery in that case.

counsel of choice due to the calendar conflict and forcing him to proceed to trial with new counsel with only four months to prepare, or keep his retained counsel and move to the second group with an uncertain trial date – potentially more than a year in the future at that point in time.

Defendant McAbee and his counsel were available for a March trial date. But because the Government counsel was not availability, the Court set the trial for the second group on September 25, 2023. *See* Minute Entry 08/12/2022.

The Government's inability to timely comply with its Rule 16 obligations, and its unavailability for a March 2023 trial date, are the primary reasons for almost the entirely of the 25 month delay between Defendant McAbee's arrest and the scheduled September 25, 2023, trial date.  This factor weighs heavily in favor of finding a due process violation that must be remedied.

>### 3. Both the Court and the Government Acknowledge That the Record Evidence Relied Upon to Detain Defendant McAbee Is Ambiguous and Subject to Plausible Alternative Conclusions With Respect to His Conduct.

The third factor in the Ninth Circuit's <u>Torres</u> test is the strength of the evidence supporting the need for pretrial detention under the Bail Reform Act.

> "In addition to the length of detention and the fault of the prosecution, many of our sister circuits and district courts within this Circuit also consider the strength of the evidence supporting the defendant's detention under the Bail Reform Act factors set forth in 18 U.S.C. § 3142(g). *See, e.g.*, <u>United States v. Ailemen</u>, 165 F.R.D. 571, 581 (N.D. Cal. 1996) (collecting cases).

*See* <u>Torres</u> at 709.

With respect to the "strength" of the evidence justifying detention under the Bail Reform Act, when considered in the context of whether an extended period of pretrial detention violates a detainee's due process rights, that same evidence may no longer justify continued detention.  In <u>United States v. Accetturo</u>, 783 F.2d 382, 388 (3d Cir. 1986), the Third Circuit observed:

> [A] determination under the Bail Reform Act that detention is necessary is without prejudice to a defendant petitioning for release at a subsequent time on due process grounds.... ***In some cases, the evidence admitted at the initial detention hearing, evaluated against the background of the duration of pretrial incarceration and the causes of that duration, may no longer justify detention.***

The Government memorandum in support of its motion to detain Defendant McAbee pending trial (ECF No.108) began with the claim Defendant McAbee assisted in the "brutal assault" of Officer A.W.  In appealing the Tennessee Magistrate's Release Order, the Government argued:

> In a 90 second time period, from approximately 4:27:00 to 4:28:30, Officers A.W., B.M., and C.M. were brutally assaulted by the rioters, including the defendant.

> The defendant, Ronald Colton McAbee, then joined the attack, which was captured by officers' body-worn cameras ("BWCs") from the inside of the Archway, and by other individuals outside of the archway...

> McAbee grabbed at A.W.'s torso, while codefendant Clayton Ray Mullins grabbed A.W.'s leg and engaged in a tug-of-war with officers who were trying to pull A.W. back into the Archway...

> At that point, McAbee turned back to A.W. and grabbed A.W.'s torso, pulling him out of the Archway. The two slid down a set of stairs and into the crowd together, with McAbee on top of A.W. and pinning A.W. down for approximately 25 seconds ....

*See* EFC. No. 108. Pgs. 5-8.

In a more recent filing opposing Defendant McAbee's appeal to the D.C.

Circuit, the government largely abandoned this argument and acknowledged

that Defendant McAbee did not "drag" Officer A.W. down the stairs and into the

mob.  The Government's Opposition Memorandum to the Appeals Court

described the video evidence as follows with regard to Defendant McAbee and

Officer A.W. sliding down the stairs:

> When another rioter began assaulting Officer C.M., McAbee
> returned his attention to Officer A.W. (Ex. 4 at 00:55 to 01:27).
> McAbee grabbed Officer A.W. by his torso, and the two slid down
> the stairs into the mob with Officer A.W. under McAbee (id.).

*See* United States of America v. Ronald McAbee, No.22-3066, Document

Number 1970304, Government's Memorandum of Law and Fact, at Pg. 10.

This view supports Defendant McAbee's claim all along that he fell on top

of Officer A.W. when the actions of the crowd caused Defendant McAbee to lose

his footing, resulting on him falling on top of Officer A.W. who was laying on

his back at McAbee's feet.  Early in the case the Government seemed to suggest

that falling on top of Officer A.W. was itself an "assault" on Officer A.W. by

Defendant McAbee.  But since involuntary actions cannot constitute a

deliberate act of "assault", the Government has abandoned this theory as well.

The Government's alterations acknowledge that Defendant McAbee and

Officer A.W. slid down the stairs together after Defendant McAbee fell and

landed on top of him, and Defendant McAbee did not drag Officer A.W. down

the stairs and into the crowd.

The Government's shift in position also acknowledged – as recognized by

the Senior Judge Sullivan -- that the video evidence does not show Defendant

McAbee striking or otherwise assaulting Officer A.W. at any point in the nearly

25 seconds that he was on top of him.

> "The Court declined to make factual findings as to "the
> period after Mr. McAbee and Officer A.W. tumbled down the
> stairs" because the video evidence did "not make clear
> whether Mr. McAbee was pinning the officer to the ground in
> an aggressive way or in another way meant to shield the
> officer from other rioters."

*See* EFC. No. 218.

Both the Court and the Government admit that Defendant McAbee

attempted to prevent members of the crowd from assaulting Officer A.W. while

the Officer was in a vulnerable position – on his back, face-up, on the stairs.

Consistent with the third factor in the Ninth Circuit's <u>Torres</u> test, and the

authorities from other Circuits cited herein, this Court must re-examine the

<u>strength</u> of the government's evidence, and the actual nature of any threat his

release might pose to the community.  This Court must determine whether that

evidence is so compelling as to justify Defendant McAbee's continued pretrial

detention where the length of his detention otherwise constitutes a violation of

his due process rights.  This requires more than simply revisiting the

justification under the Bail Reform Act, as the satisfaction of the first and

second <u>Torres</u> factors changes the focus of this analysis.  To not afford the

defendant a remedy, the third factor must find that the case for continued

detention is so compelling that the violation of the due process violation must

be endured.  The Government's evidence in this case fails to meet that burden.

The Court and the Government acknowledge that the videos do not show

Defendant McAbee striking a blow against any officer. He does not punch or

strike Officer C.M. The Government and this Court describe Defendant McAbee's actions as "swinging his arm" at Officer C.M. without making contact.

The video of the second supposed assault on Officer A.W. shows that falling on top of Officer A.W. was not a volitional act – Defendant McAbee's own feet were swept out from beneath him while he was standing over Officer A.W., causing Defendant McAbee to fall on top of him.  Both the Government and this Court acknowledge that Officer A.W.'s body worn camera shows no assault by Defendant McAbee against Officer A.W. The audio also captures Defendant McAbee yelling for others to not assault or injure Officer A.W.

In addition, several of Senior Judge Sullivan's factual findings are not just disputed, but they are actually contradicted by the video evidence:

1)  Defendant McAbee dropped a police baton BEFORE moving to the middle of the tunnel entrance where Officer A.W. was on the ground after picking it up off the ground and holding it for only four seconds;

2)  Defendant McAbee never took a step backwards, i.e., dragged Officer A.W. towards the crowd, because his feet never moved.  The lack of movement by his feet means he was not pulling or dragging Officer A.W. down the stairs and into the crowd of protesters behind him as claimed by the Government.

3) Defendant McAbee's interactions with Officer C.M. came only after Officer C.M. struck Defendant McAbee across the ribs with a police baton in a "cross-check" manner.  But even then Mr. McAbee's conduct did not involve a punch – he pushed Officer C.M. away with open hands.

4)  Defendant McAbee can be heard on the audio from Officer A.W.'s body camera yelling at other protesters to not assault Off. AW.

17

The review of the factual evidence justifying detention in the face of a due process violation must take into greater consideration the alternative view of the evidence presented by the defendant suffering a violation of his due process rights.  Defendant McAbee is asserting his factual innocence and has set forth in specific detail exactly what his testimony will be in explaining his actions on January 6.  Whether to accept his testimony and exonerate him is a question for a jury to decide.  But there are real factual disputes about what the video evidence in this case depicts, and the "strength" of the Government's case simply comes down to the Government's interpretation of the video versus Defendant McAbee's first-hand account of what happened during those 90 seconds.  This Court must recognize that, if accepted by a jury, Defendant McAbee's testimony would lead to complete exoneration on the assault charge.

**4**.    **Judge Hogan Granted Release Of Another Defendant Based On The Same Due Process Violation**

Senior Judge Hogan ordered Defendant Ryan Nichols released from custody after the assertions of both due process violations due to the length of his pretrial detention and physical retaliation he suffered at the hands of the facility staff while he was detained in DOC.  *See* United States v. Ryan Nichols, et. al. 21-cr-00117.  EFC. No. 150.

After being detained for nearly 19 months, Defendant Nichols filed a motion for released based on a due process violation similar to this motion by Defendant McAbee.  Id.  Nichols had been detailed since January 18, 2021, but was ordered released on November 11, 2022, with Judge Hogan agreeing with

the argument made by Defendant Nichols, which were nearly identical to the issues raised by Defendant McAbee here. *See* EFC No. 181.

## II.     Defendant McAbee's Detention Irreparably Compromises His Ability To Assist In The Preparation Of His Defense For Trial.

After an initial determination of pre-trial detention, the Bail Reform Act provides that a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

Under this statutory provision, the defendant otherwise subject to pretrial detention may be granted temporary release by showing the presence of two (2) factors: (1) that his temporary release is necessary for the preparation of his defense or another compelling reason; and, (2) that he could be released to the custody of the an "appropriate person." United States v. Dhavale, No. 19-MJ-00092, 2020 WL 1935544 (D.D.C. Apr. 21, 2020).

A pretrial detainee generally is "hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense." United States v. Ali, 965 F. Supp. 2d 139, 151-52 (D.D.C. 2013) (citing Barker v. Wingo, 407 U.S. 514, 520, 533 (1972)).

> "Pretrial detention limits defense counsels' access to their client and thus limits counsels' ability to prepare effectively for trial and to prepare the defendant to testify. Moreover, the physical and psychological toll of pretrial detention, particularly a detention lasting for several years, where the defendant is effectively cut off from everyone but his attorneys, can significantly affect a defendant's ability to participate in his own defense."

*Id.*

Defendant McAbee is now detained at the Central Virginia Regional Jail (CVRJ) in Orange, Virginia, where attorney visitation policies make it impossible for him to assist counsel in the preparation of his defense for trial. Another January 6 Defendant, Jeffrey Scott Brown, also housed at CVRJ, was released from detention for purposes of preparing for trial as noted in greater detail below.  Defendant McAbee should be released for the same reasons.

> **1. Defendant McAbee Was Subjected to Retaliation During His Time At DOC CTF, Forcing His Move to Central Virginia Regional Jail Where He Has Greater Difficulty Working With His Attorney To Prepare His Defense.**

On September 5, 2022, Defendant McAbee left his cell at the District of Columbia Department of Corrections Central Treatment Facility (DOC CTF) to receive medication from the Nurse's Station *as directed*.  During the short time Defendant McAbee was out his cell to receive the oral medication, he was unjustifiably assaulted by Lt. Morena Lancaster of the D.C. Department of Corrections.  Lt. Lancaster at first verbally chastised Defendant McAbee about not wearing a mask and ordered him to put one on.  But beçause Defendant McAbee was at the Nurse's Station to receive oral medication, he hesitated to comply with her command until after taking the medication.

In response to his failure to immediately comply with her order, Lt. Lancaster assaulted Defendant McAbee by striking him with her baton, and continued to do so after he was on the ground, restrained and entirely noncombative.  Lt. Lancaster then deployed and *entire can* of OC spray at

Defendant McAbee's face from a very short distance while Defendant McAbee was restrained on the ground as punishment for not putting on a mask.

Defendant McAbee was placed in segregation immediately following the attack and was not taken to wash the OC spray of his face and body for over eight hours.  Defendant McAbee suffered chemical burns to his skin because he was not given the property treatment in a timely manner.

Within a matter of days Defendant McAbee was moved by the U.S. Marshall's Service from the DOC CTF in Washington D.C. to the CVRJ in Orange, Virginia, where he is now held.  Counsel has been informed that Lt. Lancaster has been removed from the Unit housing January 6 detainees, as this was not the first incident involving her.

### 2. The Central Virginia Regional Jail Policies for Attorney Visitation Interfere With Defendant McAbee's Ability to Participate in the Preparation of his Defense.

Because Defendant McAbee is now housed at the CVRJ, his ability to participate the preparation of his defense is irreparably damaged by an inability to receive and review *any* of the electronic discovery in this case, including the video evidence.  The harm to his due process rights, including his right to effective representation by counsel, by the policies of the CVRJ has been recognized by Judge Amit Mehta in this District.

Defendant McAbee is accused of participating in assaults of Officers C.M. and A.W.  Both the Government and the Court have acknowledged in writing that the video evidence is subject to more than one interpretation with regard to Defendant McAbee's actions and intentions.

Defendant McAbee's "factual innocence" defense turns on what his testimony will be about what he did, what caused him to act in the manner he acted, and what were his intentions towards the two Officers in question. Detailed analysis and second-by-second narration of the video evidence will be the centerpiece Defendant McAbee's defense at trial.

Whether the Court considers the requested relief appropriate under 18 U.S.C. § 3142(i) or as changed circumstances under 18 U.S.C. § 3142(f), pre-trial release is appropriate here because Defendant McAbee cannot meaningfully participate in the preparation of his defense without the ability to review in the presence of his counsel the video evidence likely to be used against him at trial. The ability to have this interaction with Counsel in preparation for trial is paramount.

During the time Defendant McAbee was detained at the DOC CTF in Washington D.C -- along with dozens of other January 6 defendants – the Court, the Federal Defender's Office, U.S. Marshall Service, defense counsel, and the DOC have gone to great lengths to ensure that detained defendants have access to electronic discovery, including providing them laptop computers to use in reviewing video evidence. This allows counsel and detained defendants to view the video evidence together when preparing for trial.

But the attorney-client visitation policies at the CVRJ do not allow counsel to bring in any electronic devices during attorney-client meetings. This policy prevents Defendant McAbee from reviewing electronic discovery during attorney-client visits. In fact, it prevents Defendant McAbee from viewing electronic evidence entirely.

The _**only**_ available means for Defendant McAbee to review discovery is by hard copies of documents, including still frames taken from video evidence. But actually reviewing the video evidence itself is not allowed by CVRJ policy. Counsel is not allowed to bring laptops or cellular telephones into the CVRJ, and no electronic devices are made available for the review of video evidence with detainees during such visits. Attorneys are not allowed to mail devices such as "thumb" drives or hard drives with discovery for detainees to review.

Defendant McAbee is unable to review _**any**_ digital materials at CVRJ, and his ability to have effective representation by counsel in the preparation and presentation of his defense is irreparably compromised as a result.

### 3. Judge Mehta Granted Release Of Another Defendant Based On Defendant's Inability To Receive And Review Discovery

Judge Mehta issued pretrial release for Defendant Jeffrey Scott Brown after the filing of a motion for release to prepare for trial. *See* United States v. Peter Schwartz, et. al. 21-cr-00178. EFC No. 107. Defendant Brown was similarly situated to Defendant McAbee as he was detained at CVRJ and was without the same ability to review discovery as defendants at DOC CTF.

Defendant Brown filed a motion for pretrial release on July 19, 2022, with a planned trial date set for November 28, 2022. Seeing the urgency of the matter given that the trial date was only four months away, Judge Mehta held a hearing on the motion only two days after it was filed -- on July 21, 2022 – and issued an electronic order that same day releasing Defendant Brown on terms and conditions of pretrial release in order to allow him and his counsel to adequately prepare for the upcoming trial.

**III.   Defendant McAbee Should Be Released To The Custody Of His Wife Who Is An Appropriate Third-Party Custodian.**

Defendant McAbee has already submitted to the Court a plan for release, which Senior Judge Sullivan determined was a factor weighing in favor or granting pretrial release under the Bail Reform Act.  The details of the proposed pretrial release now will be nearly identical to what was proposed previously – home incarceration with GPS monitoring, supervised by Defendant's wife Sarah McAbee, along with full-time employment with NEURO TOUR Physical Therapy, Inc, located in Marietta, Georgia, which can be done remotely from his residence.  The details will be resubmitted to Pretrial Services to confirm.

## Conclusion

For the foregoing reasons, this Court should order Defendant McAbee's immediate release.

Dated: February 2, 2023                          Respectfully submitted,

/s/ William L. Shipley
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com
*Attorney for Defendant*